UNITED STATES of America, Appellee,

v.

James ROPER, Appellant.

No. 83–5034.

United States Court of Appeals,
Fourth Circuit.

Argued July 15, 1983.
Decided Aug. 29, 1983.

John R. Hughes, Greensboro, N.C., for appellant.

Janis Kockritz, Dept. of Justice, Washington, D.C. (Samuel T. Currin, U.S. Atty., Raleigh, N.C., on brief), for appellee.

Before PHILLIPS, SPROUSE and ERVIN, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

James Roper appeals his conviction for the importation of marijuana and methaqualone into the United States in violation of 21 U.S.C. §§ 952(a), 960(a)(1). Roper contends that his right to a speedy trial was abridged and that he was improperly sentenced for his crimes. Finding no merit to these arguments, we affirm.

## I

The underlying circumstances of the importation scheme are unimportant to this appeal except for the fact that Roper was convicted of importing some 3,300 pounds of marijuana and 850 pounds of methaqualone into the United States from Colombia. The evidence at trial indicated that Roper and his co-pilot, Hu Chang, landed the plane at a small airport in eastern North Carolina, but law enforcement officers were on their trail and the two pilots fled before the plane could be unloaded. Chang was captured the next day, but Roper's whereabouts remained unknown.

On September 5, 1980, the grand jury for the Eastern District of North Carolina returned a true bill of indictment that charged a number of persons involved in the deal with Roper with conspiracy and importation of illicit drugs. Roper was identified in the indictment as "Jimmy Ripper," and an arrest warrant was issued in that name. Some of the defendants named in the indictment, including Chang, were subsequently tried and convicted, but Roper remained at large.

In June of 1982, Chang was serving his sentence in the Atlanta Federal Penitentiary when he became aware that "Jimmy Ripper" was also confined there. Chang contacted DEA Agent Michael Grimes and informed him of "Ripper's" whereabouts. The government then ascertained that Roper and "Jimmy Ripper" were the same person and that that person was wanted for drug offenses.

On July 16, 1982, the district court ordered the indictment amended to reflect Roper's true name and ordered a new arrest warrant issued for Roper. The record indicates that the U.S. Marshal in Raleigh, North Carolina, requested the U.S. Marshal in Atlanta to file a detainer on Roper. The detainer apparently was never filed, and Roper testified that he was never served with the detainer.

Roper did not appear for the initial arraignment on July 22, so the government requested a magistrate to issue a writ of habeas corpus ad prosequendum. The writ was issued on August 4, but Roper failed to appear for the August 18 arraignment. The U.S. Marshal in Atlanta returned this writ unexecuted on October 28, 1982, with the notation that Roper was not available at the penitentiary.

The government continued to seek Roper's presence for trial in North Carolina, with the magistrate issuing notices of arraignment on September 10, October 8 and October 13. At the government's request, the magistrate issued on November 5 a second writ of habeas corpus ad prosequendum requesting that Roper be brought to North Carolina. This writ was executed by the Marshal's Service on November 17; Roper was brought to North Carolina on November 18 and arraigned there on November 23. His trial commenced some two months later, on January 24, 1983.

During the period that the notices of arraignment and writs were being issued, Roper spent most of his time in the Atlanta Penitentiary. Roper entered federal penal custody on August 8, 1981, at Marion, Illinois, after being convicted in Alabama on federal conspiracy charges. He was transferred to Atlanta in October of 1981 during the pendency of his appeal in the conspiracy case. His transfer was occasioned by a writ of habeas corpus ad prosequendum from the Northern District of Georgia, where he was under indictment for a firearm violation. On May 5, Roper was cited for civil contempt and committed to jail for refusing to provide handwriting exemplars to the Georgia district court.

In a subsequent hearing on June 12 in the Georgia case, the court suppressed some crucial evidence and the government appealed. (The Eleventh Circuit reversed the suppression order, *United States v. Roper*, 702 F.2d 984 (11th Cir.1983).) Roper remained in custody, serving his conspiracy sentence and also still in civil contempt. On August 5, the Eleventh Circuit remanded his Alabama federal conspiracy case for resentencing, *United States v. Roper*, 681 F.2d 1354 (11th Cir.1982), and on October 28 Roper was transported to Mobile, Alabama

for resentencing.[1] Before leaving Atlanta, Roper on October 28 submitted handwriting exemplars to the Georgia district court and purged himself of the contempt citation.

After his return to the Atlanta Penitentiary on November 10, Roper was sent to North Carolina. Roper knew before that time that federal proceedings had been initiated against him in North Carolina, however, because he acknowledged receiving several notices of arraignment for the pending charges. Roper was ultimately convicted of two counts of importing and sentenced to the maximum term of five years on each count. This appeal followed.

## II

### A

■ Roper's main contention on appeal is that he was denied his right to a speedy trial. He claims that the delay between July 16, when the indictment was amended, and November 18, when he was finally taken to North Carolina, violated his rights under the Speedy Trial Act, 18 U.S.C. §§ 3161–3174, and also under the sixth amendment. We disagree.

Roper does not—and indeed cannot—claim that the proceedings against him were conducted in violation of any of the specific time constraints of the Speedy Trial Act. Rather, Roper claims that the delay in transferring him from Atlanta to North Carolina violated § 3161(j)(1), which states:

> If the attorney for the Government knows that a person charged with an offense is serving a term of imprisonment in any penal institution, he shall promptly—
>
> (A) undertake to obtain the presence of the prisoner for trial; or
>
> (B) cause a detainer to be filed with the person having custody of the pris-

oner and request him to so advise the prisoner and to advise the prisoner of his right to demand trial.

Simply put, Roper's claim is that the prosecuting U.S. Attorney did not "promptly undertake to obtain" his presence for trial and did not "promptly cause a detainer to be filed" with his custodian. Because of these alleged failures of the U.S. Attorney, Roper claims that his conviction should be reversed and that all charges should be dismissed.

Our research indicates a general dearth of case law on § 3161(j)(1), and we are aware of no cases directly on point. Our reading of the statute convinces us, however, that Roper was not deprived of his rights as guaranteed by § 3161(j)(1). That statute is written in the alternative, requiring a government attorney who learns that a person charged with an offense is serving time in a penal facility to (A) promptly undertake to obtain that person for trial *or* (B) promptly cause a detainer to be filed.

Roper claims that no detainer was ever filed or served upon him. While the government disputes Roper's claim, our review of the record leaves us with great doubt about whether the detainer was ever filed with Roper's custodian at Atlanta. Because the government has failed to demonstrate the existence of the detainer, we accept Roper's claim that no detainer was filed.[2]

Our inquiry is thus simplified to whether the prosecuting government attorney in North Carolina did "promptly undertake to obtain the presence of [Roper] for trial." We hold that the government attorney did act promptly enough to comply with the statute.

Shortly after the government became aware that Roper was in Atlanta, it success-

---

1. Roper's trip to Mobile on October 28 explains why the U.S. Marshal in Atlanta returned the unexecuted writ of habeas corpus ad prosequendum on that date with the notation that Roper was currently unavailable at that prison. We do not understand—and government counsel was unable to explain—why this writ that was issued on August 4 was not returned unexecuted until October 28. The whereabouts of

this writ for this period of almost three months is unknown.

2. Sections 3161(j)(2)–(3) are relevant only if a detainer is filed under § 3161(j)(1)(B). Because we find no detainer was filed, we have no occasion to address the government's compliance with §§ 3161(j)(2)–(3).

fully sought to have the indictment amended. A new arrest warrant for Roper was issued on July 16, along with a notice of arraignment. Also on that date the U.S. Attorney attempted—apparently unsuccessfully—to have a detainer on Roper filed.

When Roper did not show for the initial arraignment, the government had the magistrate issue more papers to obtain Roper: at least four more notices of arraignment and two writs of habeas corpus ad prosequendum were issued on behalf of the government before Roper's presence was obtained. The prompt and repeated efforts of the government in this case are sufficient to comply with § 3161(j)(1)(A), especially in light of Roper's knowledge of the pending proceeding and the lack of prejudice to him from the delay. Roper admitted having received the notices of arraignment while in Atlanta, and he was simultaneously involved in several other proceedings that were requiring his immediate attention. Although Roper could have been brought to North Carolina earlier, he was not deprived of any Speedy Trial Act rights by the failure of that occurrence at an earlier date.[3]

Roper also claims a deprivation of his sixth amendment right to a speedy trial, premised on the same delay that is the basis of this Speedy Trial Act claim. The Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), announced the appropriate analysis for resolving these sixth amendment claims, and a prime determinant of a violation is whether the delay prejudiced the defendant's ability to prepare a defense. *Id.* at 530, 532, 92 S.Ct. at 2191, 2192. The only "prejudice" suggested is that Roper had "only" two months after arraignment to prepare his defense. We find this unpersuasive, especially in light of the fact that the basic command of § 3161 is that defendants pleading not guilty should be tried within 70 days after the latter of the date

of indictment or the first appearance before a judicial officer of the court where the charge is pending. There is no indication in the record of a motion by Roper for a continuance nor is there any indication that his defense was inadequately prepared or presented. We are unable to discern any infringement of Roper's sixth amendment right caused by the delay and accordingly deny relief on this ground.

### B

▮ Roper's second attack in this appeal focuses upon perceived improprieties in sentencing. Roper first claims that the district court acted upon "materially false information" in sentencing him for his crimes. Roper's claim is grounded in the following colloquy between the trial judge and defense counsel:

THE COURT: Mr. Roper's probation, I feel, will be revoked if sentence is—as sentence is imposed in this case. And I believe he'll serve five years on the other sentence. And that any sentence imposed in this case will run concurrent with that sentence. So, for any sentence to have any bearing, it will have to be one that will either have to commence after the sentence he's presently serving or at least be of sufficient length of time so that he will remain incarcerated subsequent to his release on the other charge.

MR. HUGHES: Well, Sir—Your Honor, may I correct what I think it's—I don't know if his probation will be revoked on the other one, because that offense occurred after this one.

THE COURT: All right, sir. Well, having taken those matters into account, Madam Clerk, on the verdict that the jury finding the defendant guilty. . . .

Roper now claims that the district court acted in sentencing on the assumption that Roper's probation for the Alabama federal

---

**3.** By so holding we do not condone what remains to us a puzzling course of conduct by the government officials involved.

conviction would be revoked, and this assumption was false.[4]

Although the use of some kinds of material misinformation in sentencing can violate due process rights of a defendant and thus necessitate resentencing, *see Roberts v. United States,* 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980); *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), this is not a case of that ilk. First, the trial court was not acting upon "information" but rather upon his opinion, and he specifically acknowledged that he had taken defense counsel's opposite (and ultimately correct) opinion "into account" before sentencing. More importantly, the district court did not rely in sentencing on the fact that Roper's probation would be revoked. Rather, the district court was simply stating that the sentence in this case, to be effective, would have to be of sufficient length to keep Roper incarcerated subsequent to the conclusion—through probation or otherwise—of his incarceration on the other charges. The trial court was concerned that the instant sentences not be subsumed as concurrent penalties within the prior sentences imposed, and his opinion concerning the revocation of probation cannot be construed as an improper reliance upon material misinformation.

Roper also claims that the trial judge sentenced him "mechanistically" and failed to fit the sentence to the individual defendant. The theory is apparently as follows: the trial judge was recently appointed to the bench and this was his first drug-related trial; the trial judge imposed the maximum sentences on both counts; the trial judge, after sentencing, stated:

> And I would like to note the court's concurrence with Mr. Dixon's [the Assistant

United States Attorney prosecuting the case] views. Anyone who imports vast quantities of drugs into this country, sentences thereby innumerable number of its citizens to some type of living hell.

To Roper, all of this adds up to an abuse of the trial judge's discretionary sentencing power. We have considered the claim and find it without merit. No abuse of discretion is shown.[5]

### IV

Because we find no merit to any of Roper's challenges to his conviction and sentencing, the judgment of the district court must be affirmed.

AFFIRMED.

---

4. Roper's probation for the conspiracy conviction was not revoked because the illegal acts constituting the conspiracy were committed *after* the importation of drugs that was the basis of the conviction in this case.

5. Roper also claims that the court erred in allowing two prosecution witnesses to testify. Rogers claimed that these witnesses' connection to the government as informants was concealed from the jury, and that their testimony

should have been excluded under Fed.R.Evid. 403 as prejudicial. Our review of the record indicates that the witnesses' connection with the government was sufficiently disclosed by those witnesses and other government witnesses. Roper had a sufficient opportunity to cross-examine both witnesses, and Roper did not object to their testimony as prejudicial. The trial court did not err in admitting this testimony.