358 S.E.2d 603

**STATE of West Virginia**

v.

**Todd DRACHMAN.**

No. 17325.

Supreme Court of Appeals
of West Virginia.

June 15, 1987.

208

Gayle Fiedler, Asst. Atty. Gen., for appellant.

Raymond H. Yackel, Oliver & Yackel, Morgantown, for appellee.

MILLER, Justice:

The defendant, Todd Drachman, appeals from a judgment of the Circuit Court of Monongalia County finding him guilty of the felony offense of issuing a worthless check in the amount of $7,250. His sole contention is that the circuit court erred in not dismissing the indictment on the ground that his constitutional right to a speedy trial had been denied.

On December 24, 1978, the defendant executed a check in the amount of $7,250 for the purchase of some machinery from one John Wassick, Jr., in Morgantown, West Virginia. This check was drawn on an account with the First Citizens Bank and Trust Company of Fayetteville, North Carolina. When this check was returned due to insufficient funds, Mr. Wassick ob-

tained a felony warrant charging the defendant with issuing a worthless check.

The defendant was a resident of the State of North Carolina. On March 28, 1979, the defendant was served in North Carolina with a warrant charging him as a fugitive from justice. The defendant was released on bond and was scheduled to appear in the Superior Court of Cumberland County, North Carolina, on June 26, 1979.

Prior to this hearing, the defendant was arrested on charges of forgery and larceny in North Carolina. Thereafter, the defendant entered into a plea agreement with the State of North Carolina. At the scheduled hearing on June 26, 1979, the District Attorney for North Carolina announced that the State did not wish to proceed on the warrant for extradition.

In August, 1979, the defendant began serving his sentence in North Carolina for crimes committed there. On September 18, 1979, the fugitive warrant pending against the defendant was ordered dismissed. As a reason for the dismissal, the dismissal form states, "Defendant is serving active sentence. Authorities notified to file detainer with Department of Corrections." The fugitive from justice warrant, however, was apparently never officially dismissed.

The defendant was paroled in North Carolina in February, 1982. Subsequently, the defendant was again arrested in August, 1983, on the fugitive from justice warrant on the West Virginia charge. At a court appearance in North Carolina on November 18, 1983, he was ordered to be returned to

West Virginia to face charges on the original warrant issued in February, 1979. He was released on bond on November 23, 1983, after a hearing in the Circuit Court of Monongalia County. On January 5, 1984, the defendant was indicted by a Monongalia County grand jury on the felony charge of issuing a worthless check. As earlier noted, the court denied his motion to dismiss the indictment because of the failure to accord him a speedy trial. The defendant's trial was held in the circuit court on February 14, 1985. Upon conviction, he was placed on five years probation and ordered to make restitution.

The defendant does not rely on the three-term rule, W.Va. Code, 62–3–21, because its provisions were not triggered until his indictment in West Virginia in 1984.[1] Instead, he contends that he was denied a speedy trial under the Sixth and Fourteenth Amendments to the United States Constitution and Article III, Section 14 of the West Virginia Constitution. He argues that the issuance of a felony arrest warrant in West Virginia and his subsequent arrest in North Carolina in 1979 on a fugitive from justice warrant triggered his right to a speedy trial.

Initially, it is important to recognize that the United States Supreme Court has fashioned speedy trial rights under both the Sixth Amendment to the United States Constitution, where the term "speedy trial" is used,[2] and also under the Due Process Clause of the Fifth Amendment to the United States Constitution.[3]

The reason for utilizing these two different constitutional provisions is that

1. In *Good v. Handlan,* 176 W.Va. 145, 342 S.E.2d 111 (1986), we recognized that our three-term rule, W.Va.Code, 62–3–21, forms the legislative expression of our State Constitution's speedy trial right. W.Va. Const. art. III, § 14. This is triggered by the return of an indictment and is subject to the exceptions or tolling events contained in the statute. This statutory right provides a separate basis for dismissing a case which is independent of the judicially fashioned balancing test for constitutional speedy trial claims. Other courts have reached the same conclusion under their speedy trial statutes. *E.g., State ex rel. Berger v. Superior Court,* 111 Ariz. 335, 529 P.2d 686 (1974); *Gardner v. State,* 252 Ark. 828, 481 S.W.2d 342 (1972); *Watson v.*

*People,* 700 P.2d 544 (Colo.1985) (En Banc); *State v. Richmond,* 611 S.W.2d 351 (Mo.App. 1980); *State v. Alvarez,* 189 Neb. 281, 202 N.W.2d 604 (1972); *Beckett v. State,* 73 Wis. 2d 345, 243 N.W.2d 472 (1976).

2. The language of the Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial."

3. The Due Process Clause of the Fifth Amendment states: "No person shall be ... deprived of life, liberty, or property, without due process of law."

the Sixth Amendment speedy trial right begins with the actual arrest of the defendant and will also be initiated where there has been no arrest, but formal charges have been brought by way of an indictment or information, as indicated by *United States v. Marion*, 404 U.S. 307, 320–21, 92 S.Ct. 455, 463, 30 L.Ed.2d 468, 478–79 (1971):

> "To legally arrest and detain, the Government must assert probable cause to believe the arrestee has committed a crime. Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends. These considerations were substantial underpinnings for the decision in *Klopfer v. North Carolina* [386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967)]; see also *Smith v. Hooey*, 393 U.S. 374, 377–378, 89 S.Ct. 575, 576–577, 21 L.Ed.2d 607 [611] (1969). So viewed, it is readily understandable that it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment.
>
> "Invocation of the speedy trial provision thus need not await indictment, information, or other formal charge." (Footnote omitted).

In those situations where there has been no arrest or indictment, the Sixth Amendment right to a speedy trial is not implicated. Yet, the prosecution may have substantially delayed the institution of criminal proceedings causing prejudice to the defendant by way of loss of witnesses or other evidence. In this situation, the Fifth Amendment due process standard is utilized, as the Supreme Court indicated in *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977).

However, it appears that the Supreme Court is reluctant to accord relief under the Due Process Clause because some of the factors underlying the right to a speedy trial are not present when there has been no arrest or formal charge made against the defendant. In *Lovasco*, 431 U.S. at 791, 97 S.Ct. at 2049, 52 L.Ed.2d at 760, the Supreme Court emphasized, citing from *Marion, supra*, that one of the substantial reasons for according Sixth Amendment speedy trial relief was that once the defendant was arrested this may "'interfere with ... [his] liberty, ... disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.' 404 U.S., at 320, 30 L.Ed.2d [at 478], 92 S.Ct. [at 463]." These considerations do not exist when there have been no formal charges placed against a defendant. The Supreme Court also pointed out that the criminal statute of limitations will come into play where no charges are made as a prosecution may be barred if charges are not timely filed.

Furthermore, the Supreme Court in *Lovasco* offered a number of reasons why it was reluctant to force a prosecutor to file charges, i.e., possible hampering of further investigation as to additional charges or other defendants and the possibility of filing doubtful cases rather than enabling mature consideration to prosecute. It concluded in *Lovasco* that it was unable to formulate a test under the Due Process Clause for delay prior to the bringing of formal charges.[4]

---

4. We have attempted to formulate a test for delay in the institution of criminal proceedings under due process principles. In *State ex rel. Leonard v. Hey*, W.Va., 269 S.E.2d 394 (1980), we stated in Syllabus Point 1:

> "A delay of eleven years between the commission of a crime and the arrest or indictment of a defendant, his location and identification having been known throughout the period, is presumptively prejudicial to the defendant and violates his right to due process of law, U.S. Const.Amend. XIV, and W.Va. Const. art. 3, § 10. The presumption is rebuttable by the government."

Later, in *State v. Richey*, 171 W.Va. 342, 298 S.E.2d 879 (1982), where the delay was initially not found to be *prima facie* excessive, we stated in Syllabus Point 1:

> "The general rule is that where there is a delay between the commission of the crime

On the other hand, once formal charges are brought and the Sixth Amendment speedy trial right has attached, the Supreme Court has formulated a balancing test in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 116–17 (1972), to determine whether a defendant has been deprived of his speedy trial right:

"A balancing test necessarily compels courts to approach speedy trial cases on an *ad hoc* basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

"The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." (Footnote omitted).

It is also recognized that the Sixth Amendment speedy trial right can be applied where a defendant is detained in another jurisdiction under sentence. In *Dickey v. Florida,* 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970), the defendant had been arrested in Florida and was subsequently convicted in federal court and sentenced to a federal prison. The State of Florida issued a detainer, but took no steps to obtain his presence in Florida. The defendant made several attempts to compel Florida to bring him to trial, which was ultimately done some seven years after his Florida arrest.

Upon his conviction in Florida over his speedy trial objection, the United States Supreme Court voided the conviction. It found that two witnesses had died creating substantial prejudice to the defendant's alibi defense. It could find no reasonable explanation for the delay and found the defendant to have diligently exercised his speedy trial claim.[5]

In this case, the State argues that the defendant's speedy trial claim under the Sixth Amendment should be aborted because the initial warrant for the defendant's arrest in North Carolina was a fugitive warrant. It suggests that the fugitive warrant was unrelated to the West Virginia warrant on the bad check charge. However, the record reveals that the North Carolina fugitive warrant was predicated on the West Virginia charge.

The State's reliance on *United States v. MacDonald,* 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982), is also misplaced since it involved the question of whether the bringing and dismissal of military charges for murder would trigger the Sixth Amendment speedy trial right as to civilian murder charges filed some four years later. The Supreme Court held the Sixth Amendment right had not been triggered. Here, we do not have the dismissal of the underlying West Virginia charge as it was again used to obtain a fugitive warrant resulting in the defendant's arrest in August, 1983, and his eventual return to West Virginia.

 Thus we come to the conclusion that the defendant has a right to assert his Sixth Amendment speedy trial claim. We have essentially adopted the *Barker* balancing test in our jurisdiction and added that it forms the standard under Article III, Section 14 of the West Virginia Constitution, which provides that a trial "shall be [conducted] . . . without unreasonable delay."

In *State v. Foddrell,* 171 W.Va. 54, 297 S.E.2d 829 (1982), we found a five-and-one-

---

and the return of the indictment or the arrest of the defendant, the burden rests initially upon the defendant to demonstrate how such delay has prejudiced his case if such delay is not *prima facie* excessive."

**5.** *Dickey's* conclusion, 398 U.S. at 38, 90 S.Ct. at 1569, 26 L.Ed.2d at 32, was:

"Here, however, no valid reason for the delay existed; it was exclusively for the convenience of the State. . . .

"In addition to exerting every effort to require the State to try him, there is present in this record abundant evidence of actual prejudice to petitioner in the death of two potential witnesses, unavailability of another, and the loss of police records."

half-year delay sufficient to merit further inquiry and in *State v. Cox,* 162 W.Va. 915, 253 S.E.2d 517 (1979), a two-and-one-half-year delay was deemed sufficient to examine the other factors in the balancing test set out in *Barker.* In both of these cases, we found that there were some adequate reasons for the delay and that the defendants had not been substantially prejudiced by the delay. We pronounced in Syllabus Points 1 and 2 of *Foddrell* our basic speedy trial rules, modeled after *Barker:*

"1. The right to a trial without unreasonable delay is basic in the administration of criminal justice and is guaranteed by both the state and federal constitution. U.S. Const.Amend. VI; W.Va. Const., Art. 3, § 14.

"2. A determination of whether a defendant has been denied a trial without unreasonable delay requires consideration of four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his rights; and (4) prejudice to the defendant. The balancing of the conduct of the defendant against the conduct of the State should be made on a case-by-case basis and no one factor is either necessary or sufficient to support a finding that the defendant has been denied a speedy trial."

As the Supreme Court in *Barker* observed, the length of the delay is a triggering mechanism. Until there is some delay which is presumptively prejudicial there is no necessity for inquiry into the other factors that go into the balance.

Here, we believe the delay of more than four years is of sufficient length to trigger further inquiry. The State offers no reason for the delay which is the second factor in the balancing test. It does not argue that the defendant's out-of-state incarceration in North Carolina would excuse its delay. This would be a difficult proposition to assert in light of *Dickey v. Florida, supra,* and *Smith v. Hooey,* 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969), which mandate that the prosecution has a duty to seek the return of a prisoner known to be incarcerated out of state.[6] We have recognized this obligation under our statutory three-term rule in *State ex rel. Stines v. Locke,* 159 W.Va. 292, 220 S.E.2d 443 (1974). *See also State ex rel. Sutton v. Keadle,* 176 W.Va. 138, 143, 342 S.E.2d 103, 108 (1985).[7]

With regard to the question of whether there was prejudice to the defendant arising from the delay, we note that *Barker* identified three interests of the defendant which the speedy trial right was designed to protect and which should be utilized in the assessment of the defendant's prejudice:

"(i) [T]o prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defen-

6. In considering the length and reason for the delay, however, courts do not count for speedy trial purposes the period of time that expires after the defendant has been indicted or otherwise formally charged where the government has been unable to locate the accused or to secure his presence for trial through the exercise of diligent, good faith efforts. *United States v. Roper,* 716 F.2d 611 (4th Cir.1983); *United States v. Greene,* 737 F.2d 572 (6th Cir.1984); *United States v. Agreda,* 612 F.Supp. 153 (E.D.N.Y.1985); *Kimberly v. State,* 501 So. 2d 534 (Ala.Crim.App.1986); *Ingram v. State,* 703 P.2d 415 (Alaska App.1985); *State v. Robbins,* 708 P.2d 227 (Mont.1985); *State v. Miebach,* 52 Or.App. 709, 629 P.2d 1312 (1981); *Commonwealth v. Cruz,* 524 A.2d 507 (Pa.Super.1987); *Ex Parte Powell,* 699 S.W.2d 841 (Tex.Crim.App. 1985); *State v. Bledsoe,* 31 Wash.App. 460, 643 P.2d 454 (1982).

7. In *Keadle,* we pointed out that a defendant who was incarcerated out of state under sentence could be obtained pursuant to the Interstate Agreement on Detainers, W.Va.Code, 62–14–1, *et seq.* In *Moore v. Whyte,* 164 W.Va. 718, 266 S.E.2d 137 (1980), we indicated that a writ of habeas corpus *ad prosequendum* could serve as a written request under the Interstate Agreement on Detainers. *See also State v. Fender,* 165 W.Va. 440, 268 S.E.2d 120 (1980). Of course, the provisions of our extradition statute, W.Va.Code, 5–1–7, can also be utilized to secure the return of an out-of-state defendant. We noted in *State ex rel. Boso v. Warmuth,* 165 W.Va. 247, 270 S.E.2d 631 (1980), that the State's duty to use reasonable diligence can be excused where the defendant frustrates and resists the attempt to return him to this State.

dant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown." 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118. (Footnote omitted).

The defendant's primary assertion of prejudice is that he lost the ability to have a concurrent sentence if the West Virginia trial had taken place while he was serving his North Carolina sentence. This claim arises from a statement in *Smith v. Hooey*, 393 U.S. at 378, 89 S.Ct. at 577, 21 L.Ed.2d at 611, that "the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed." (Footnote omitted). To some degree, this is refuted by the fact that the defendant was given probation in this State conditioned on making restitution.

There is no claim made that the delay engendered any loss of evidence or otherwise hampered the defense of the case. The nature of this case involving as it did a single bad check written by the defendant made the evidentiary problem rather simple. Moreover, he was not incarcerated on the West Virginia charge except for a brief period of time in North Carolina. His main period of incarceration came about as a result of his guilty plea to North Carolina charges.

When the defendant was rearrested on the West Virginia charge, he was placed on bond and remained on bond until his trial in West Virginia. Thus, we find no prejudice arising from oppressive pretrial incarceration. Even the anxiety factor is minimal because it appears that while he was incarcerated in North Carolina, the extradition warrant was thought to be dismissed. With no detainer lodged against him, he could well have concluded that the West Virginia charges had been dropped.

■ Finally, we come to the defendant's assertion of his speedy trial claim. His failure to assert it while incarcerated in North Carolina may be excused on the basis that he was unaware that the West Virginia charge was still being pursued. However, once he was aware that it was being pursued when he was rearrested in August, 1983, he did nothing to assert the right until an oral motion was made at the time of trial in February, 1985. During this fifteen-month period, he obtained four continuances of his trial date. We conclude that there was not a timely assertion of the right.[8]

Based on the foregoing analysis, we hold that the defendant is not entitled to have the indictment dismissed on speedy trial grounds and we affirm the judgment of the circuit court.

Affirmed.

8. We do not mean to imply that the defendant waived his speedy trial right for as the Supreme Court in *Barker*, 407 U.S. at 528, 92 S.Ct. at 2191, 33 L.Ed.2d at 116, explained:
"We reject, therefore, the rule that a defendant who fails to demand a speedy trial forever waives his right. This does not mean, however, that the defendant has no responsibility to assert his right. We think the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right." (Footnote omitted).