401 S.E.2d 901

**STATE of West Virginia**

v.

**James BONHAM.**

**No. 19440.**

Supreme Court of Appeals of
West Virginia.

Dec. 14, 1990.

Rehearing Denied Feb. 6, 1991.

Chauncey H. Browning, Charleston, Clark B. Frame & Wesley W. Metheney, Wilson, Frame & Metheney, Morgantown, for James Bonham.

Roger W. Tompkins, Atty. Gen., Jacqueline A. Hallinan, Asst. Atty. Gen., Attorney General's Office, Charleston, for state of W.Va.

PER CURIAM:

This is an appeal by James Bonham from an order of the Circuit Court of Cabell County sentencing him to two consecutive terms of from one to five years in the State penitentiary for conspiring to commit malicious wounding and for voluntary manslaughter. On appeal Mr. Bonham claims that the trial court erred in allowing the indictment against him to stand in view of the fact that the chief investigating officer gave false and prejudiced testimony to the grand jury. He also claims that the trial court erred in allowing the prosecution to introduce evidence of completely unrelated crimes committed by the defendant, that the court erred in granting certain co-defendants a severance of their trials, that the court erred in allowing the State to reindict him in a county from which he had been granted a change of venue, and that the State erred in failing to afford him a speedy trial. After reviewing the record, the Court can find no reversible error. Accordingly, the judgment of the Circuit Court of Cabell County is affirmed.

Evidence adduced during the trial of this case showed that in the early morning hours of March 12, 1986, Jimmy Vickers, who was the victim of the crimes charged in the indictment, discovered Kim Dolan, a girl whom he had been dating, in bed with Paul Kizer. Vickers hit Kizer and slapped Kim Dolan and told her never to call him again.

On the following day, according to the State's evidence, Paul Kizer contacted the defendant, James Bonham, who was his employee, about the incident. Apparently Kizer intended for the defendant to assist him in getting retribution. The defendant, in turn, contacted an individual named Rush Smith and "retained" him to "whip" Jimmy Vickers. Rush Smith then engaged James Davis, who had previously assisted him in certain similar matters, to locate Vickers, whom Smith did not know.

After some searching, Smith and Davis located Vickers at Vickers' trailer at around 2:00 a.m. on March 16, 1986. Davis knocked on the door of the trailer, and when Vickers answered and Davis saw his size, Davis, according to the evidence most favorable to the defendant, shot him. Vickers subsequently died.

The defendant and Paul Kizer were both arrested on March 21, 1986, and charged identically. Subsequently, Arthur Ciccarello, a specially appointed prosecutor, presented the charges to a Boone County grand jury. That grand jury indicted the defendant on May 29, 1987.

The venue of the case was changed to Cabell County because of widespread adverse publicity in Boone County, and it was then learned that the victim's family had agreed to pay Ciccarello $10,000 for each case he prosecuted as a result of the victim's death. The defendant claimed that as a result of the payment the indictment against him was improper, and, as a consequence, the indictment was dismissed without prejudice.

On April 21, 1988, the case was presented to a second grand jury in Boone County. The principal witnesses were Rush Smith and State Police Trooper Paul Cross. At the conclusion of the proceedings, the second Boone County grand jury reindicted the defendant.

The defendant and Kizer plead not guilty to the charges against them, and over the next several weeks the defendant, according to his brief, relied on Kizer's lawyers in preparing his defense, even though he was represented by a separate attorney.

At a hearing held on October 6, 1988, less than six weeks prior to commencement of trial, the trial court ordered that the defendant and Kizer be tried separately. The court then granted the State's motion to try the defendant first, despite his motion for a continuance to secure additional counsel.

The defendant was tried beginning on November 14, 1988. At that trial, Rush Smith, the hit man, testified as to the circumstances surrounding the death of Jimmy Vickers. He directly implicated the defendant. He also testified, over defense counsel's objections, regarding five other, unrelated crimes in which the defendant was allegedly involved. Smith indicated

that in early 1985 he had "roughed up" a woman for money at the request of the defendant. He also testified that in 1985 he had thrown a molotov cocktail into a trailer at the defendant's request. Similarly, in 1985 he had burglarized a home in Beckley, and he had robbed a man at the defendant's request. Finally, Smith testified that while arranging for him to "hit" Jimmy Vickers the defendant had given him some amphetamine pills.

At the conclusion of the trial, the jury found the defendant guilty of voluntary manslaughter and of conspiracy to commit malicious wounding.

■ In the present appeal, the defendant's first assignment of error is that the trial court erred in allowing the second indictment against him to stand in the face of false testimony before the grand jury by the chief investigating officer. Among other things, he claims that the investigating officer falsely testified to the grand jury that he ran around with a gun intimidating everyone, that he refused to take a lie detector test, and that he had two or three lawyers and refused to give a statement when asked. He also claims that the arresting officer stated to the grand jury that he, by spending money, had managed to have his trial transferred to Huntington, that he had previously killed someone in Baltimore, and that he would take the Fifth Amendment if called to testify. Essentially, the defendant argues that the testimony before the grand jury was so false and outrageous that the case should be dismissed for prosecutorial misconduct.

In syllabus point 6 of *State ex rel. Pinson v. Maynard*, 181 W.Va. 662, 383 S.E.2d 844 (1989), this Court stated:

"[D]ismissal of [an] indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict' or if there is 'grave doubt' that the decision to indict was free from substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 251, 108 S.Ct. 2369, 2372, 101 L.Ed.2d 228, 238 (1986) (O'Connor, J., concurring).

See also *State v. Slie*, 158 W.Va. 672, 213 S.E.2d 109 (1975); *State v. Riley*, 151 W.Va. 364, 151 S.E.2d 308 (1966).

In *State ex rel. Pinson v. Maynard*, *supra*, the Court explained that in reviewing a case where improper evidence has been submitted to a grand jury, a court must ascertain whether there was significant and material evidence presented to the grand jury to support all the evidence of the alleged criminal offense. Then the court must determine whether the improper evidence substantially influenced the decision to indict.

In the present case, although the Court believes that the chief investigating officer's testimony was improper, the State did introduce substantial legal and competent evidence upon which the grand jury reasonably could have found the indictment against the defendant. Among other things, Rush Smith, the actual perpetrator of the offenses against Jimmy Vickers, testified that the defendant solicited him to beat Vickers and that the defendant paid him to do the job.

In this Court's view, the testimony of Rush Smith was sufficient for the grand jury to find probable cause for the return of an indictment, and, in view of the authorities cited, the Court cannot conclude that the testimony of the chief investigating officer was so prejudicial as to invalidate the indictment which was subsequently returned.

■ The defendant next claims that the trial court committed reversible error by permitting the prosecution to introduce evidence of a number of separate felonies in which the defendant was involved when the felonies were completely unrelated to the crimes with which he was charged. Specifically, the defendant claims that the court erred in allowing Smith's testimony about the defendant's involvement in the assault of the woman in early 1985, about his involvement in the attempted arson of the trailer, about his involvement in the burglary of the Beckley residence in 1985, and about his involvement in the armed robbery which occurred in November, 1985. He also claims that the court erred in allowing

the State to adduce evidence showing that he gave Rush Smith amphetamines and thus illegally transferred a controlled substance in conjunction with the procurement of Smith to assault Jimmy Vickers.

The defendant argues that the introduction of evidence of such collateral crimes constituted evidence of purported bad character and was improper under Rule 404(a)(1) of the West Virginia Rules of Evidence.

As a general rule, evidence of other crimes is not admissible for the purpose of proving that the accused acted in conformity therewith. Rule 404(a), *West Virginia Rules of Evidence*. However, Rule 404(b) provides that evidence of other crimes may be admitted to show motive, opportunity, intent, preparation, place, knowledge, identity, or the absence of mistake or accident. This rule essentially codified and elaborated principles set forth in *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974), in which the Court stated in syllabus point 12 that:

> The exceptions permitting evidence of collateral crimes and charges to be admissible against an accused are recognized as follows: the evidence is admissible if it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; and (5) the identity of the person charged with the commission of the crime on trial.

The rule as it applies in West Virginia is set forth in syllabus point 1 of *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990), as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. W.Va.R.Evid. 404(b).

Under Rule 404(b), before a trial court may admit evidence of collateral crimes, to prove motive or any of the other points for which it is admissible, an *in camera* hearing must be conducted to allow the trial court to balance the probative effect of such evidence against its prejudicial effect. *See State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986).

In the present case, the trial court conducted an *in camera* inquiry before admitting the evidence. It appears that the trial court carefully considered whether the proposed evidence fell within the parameters of Rule 404(b) of the West Virginia Rules of Evidence and also whether its prejudicial effect outweighed its probative value. The court found that the defendant's knowledge of Rush Smith's propensity to commit violent acts was an element of the crimes for which he was being tried. The court also concluded that the evidence of the defendant's character as a violent person was probative of elements of the crimes for which he was being charged and also probative of the fact that he knew that Rush Smith had a violent character. The court accordingly ruled that the evidence was admissible.

As previously indicated, under Rule 404(b) of the West Virginia Rules of Evidence, evidence of collateral acts is admissible to show intent, knowledge, and identity. Certainly, a key element of the charges against the defendant was that he intentionally conspired to set into motion against the victim intrinsically violent acts which caused the victim's death. The fact that the defendant had knowledge that Rush Smith was a violent person, as well as the fact that he had previously associated with Rush Smith to commit violent acts, tended to show that he intended Rush Smith to act in a similar manner toward the victim in the present crime. This Court believes that the evidence did tend to establish intent, preparation, knowledge, and identity, and, under the circumstances, the Court concludes that the evidence of the collateral crimes was properly admissible under Rule 404(b) of the West Virginia Rules of Evidence.

Next, the defendant claims that the trial court erred in severing his trial from that of Paul Kizer, in denying his motion for a continuance, and in requiring him to go to trial five weeks before Kizer.

█ In conjunction with this assignment, the defendant argues that, if additional information brought forth at Paul Kizer's trial had been available at his trial, he would have been acquitted. He argues that the additional information established that Jimmy Vickers, the victim, was a drug dealer and that it would have been logical for the jury to have concluded that Vickers was killed as a result of his drug activities by someone other than Rush Smith. He, in effect, claims that he should now be granted a new trial because it was brought out at Paul Kizer's trial that the victim was a drug dealer.

It has been widely, if not universally, recognized that the trials of two or more defendants indicted for the same trial may be severed, and in West Virginia the decision to sever rests in the sound discretion of the trial court. As stated in *State ex rel. Zirk v. Muntzing*, 146 W.Va. 349, 350–51, 120 S.E.2d 260, 261 (1961):

> At common law, and in the absence of a statute changing the common law rule, when two or more persons are indicted for a crime, whether a felony or a misdemeanor, it is not necessary that they be tried jointly; but the state or any one of the defendants may apply to the court for a severance, the granting of which is not a matter of right, but rests in the sound discretion of the court, to be exercised solely in the interest of justice.

In view of this rule, and in the absence of a showing of abuse of discretion, this Court cannot conclude that the trial judge abused his discretion by severing the defendant's trial from Paul Kizer's in the present case.

In examining the defendant's brief, the Court does not believe that the defendant's real complaint goes to the severance of the trials, but to the fact that he was forced to go to trial first and that he was not granted a continuance until after the completion of Paul Kizer's trial. He in essence claims that because of newly discovered facts de-

veloped at Paul Kizer's trial, he should be granted a new trial.

As a general proposition, the granting or denial of a continuance, like the granting or denial of a severance, is a matter left to the discretion of a trial judge. As stated in syllabus point 2 of *State v. Bush*, 163 W.Va. 168, 255 S.E.2d 539 (1979):

> A motion for continuance is addressed to the sound discretion of the trial court, and its ruling will not be disturbed on appeal unless there is a showing that there has been an abuse of discretion.

*See also State v. Wilkinson*, 181 W.Va. 126, 381 S.E.2d 241 (1989); *State v. Schrader*, 172 W.Va. 1, 302 S.E.2d 70 (1982); *State v. Riley*, 151 W.Va. 364, 151 S.E.2d 308 (1967).

Further, in *State v. King*, 173 W.Va. 164, 313 S.E.2d 440 (1984), this Court reiterated the long-held rules relating to when a new trial should be granted in a criminal case. In syllabus point 1 of *State v. King*, the Court stated:

> "A new trial will not be granted on the ground of newly-discovered evidence unless the case comes within the following rules: (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained. (2) It must appear from facts stated in his affidavit that plaintiff was diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict. (3) Such evidence must be new and material, and not merely cumulative; and cumulative evidence is additional evidence of the same kind to the same point. (4) The evidence must be such as ought to produce an opposite result at a second trial on the merits. (5) And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side." Syllabus, *State v. Frazier*, 162 W.Va. 935, 253 S.E.2d 534 (1979), *quoting*, Syl. pt. 1, *Halstead v. Horton*, 38 W.Va. 727, 18 S.E. 953 (1894).

■ In this Court's view, the new evidence to which the defendant attaches importance is not such as which would or ought to produce an opposite result at a second trial on the merits. During trial, Rush Smith testified that he acted at the behest of the defendant and was paid by the defendant. There was clear evidence that the victim was shot during Smith's visit. The fact that the victim was a drug dealer would not necessarily, in view of Smith's testimony, have produced an opposite result at a second trial on the merits. Under the circumstances, the Court believes that the defendant has failed to show that the trial court's severing his trial from that of the co-defendant and refusing to grant him a continuance are of such significance as to compel a reversal of the jury's verdict.

■ The defendant next claims that it was reversible error for the trial court to grant a change of venue but permit the prosecutor to obtain a reindictment in the county from which the case had been transferred without conducting *voir dire* to determine if the grand jury was prejudiced.

As previously indicated, the defendant was initially indicted in Boone County. Trial upon that indictment and venue of the case were transferred to Cabell County because of wide-spread publicity against the defendant. The first indictment was then dismissed. Then a grand jury in Boone County returned a second indictment which forms the basis of the present conviction.

In conjunction with the present assignment of error, the defendant argues that there was a probability that the grand jurors who found the indictment were biased against him and that, given the prior finding of general bias in the Boone County community, the trial court erred in allowing the second indictment returned in Boone County to stand.

In *State v. Bailey*, 159 W.Va. 167, 220 S.E.2d 432 (1975), this Court recognized that there is a distinction between the functions of a grand and petit jury. The Court noted that the grand jury is an accusatory body, not a judicial body, and as such has the right and obligation to act on its own information, however acquired. The Court also noted that the tests pertaining to the qualification of petit jurors do not apply to grand jurors, and in the absence of statutory requirements to the contrary, bias or prejudice resulting from the relationship of an individual grand juror to a particular trial participant is ordinarily not a disqualification. The Court concluded that the mere showing of suspicion of prejudice on the part of a grand juror, without any demonstration of actual prejudice, cannot constitute a denial of due process of law and should not serve as the basis of reversal of a judgment rendered on an indictment returned by a grand jury.

■ Also, as previously discussed, the fact that the grand jury considers improper matters cannot, standing alone, justify quashing of the grand jury's acts so long as there is legal and competent evidence upon which an indictment is based. *See State v. Slie*, and *State v. Clark*, 64 W.Va. 625, 63 S.E. 402 (1908).

In the present case, the Court believes the defendant has failed to show actual prejudice and, given the fact that there was before the grand jury the direct testimony of Rush Smith, an admitted participant in the crimes charged, implicating the defendant, the Court cannot conclude that the indictment against the defendant is tainted or that the trial court erred in allowing the trial to proceed on that indictment.

■ Lastly, the defendant claims that the trial court denied him a speedy trial by permitting the prosecution to proceed some two years and eight months after the alleged crime, when the delay was almost entirely due to misconduct on the part of the special prosecutors or State investigators.

The record in this case shows that the defendant was arrested on March 21, 1986. He was tried on November 14, 1988. A short time following his arrest, on May 20, 1986, he demanded a speedy trial. On December 12, 1986, he filed a petition for a writ of prohibition and writ of mandamus in the Circuit Court of Boone County seeking dismissal of all charges against him for

violation of his constitutional right to a speedy trial. The Circuit Court of Boone County failed to take action on the defendant's petition, and he filed pleadings before the Supreme Court of Appeals on January 16, 1987. After the Supreme Court proceedings were instituted, the Circuit Court of Boone County conducted an evidentiary hearing on the speedy trial issue on February 10 and February 13, 1987. At the conclusion of the hearings, the circuit court ruled that the delay in the defendant's case was not unreasonable. The question was then certified to the Supreme Court of Appeals, and the Supreme Court, on May 19, 1987, refused to docket the certified question.

In a number of cases this Court has indicated that whether a defendant's Sixth Amendment right has been violated depends upon four factors: The length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. As stated in syllabus point 4 of *State v. Drachman,* 178 W.Va. 207, 358 S.E.2d 603 (1987):

> "A determination of whether a defendant has been denied a trial without unreasonable delay requires consideration of four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his rights; and (4) prejudice to the defendant. The balancing of the conduct of the defendant against the conduct of the State should be made on a case-by-case basis and no one factor is either necessary or sufficient to support a finding that the defendant has been denied a speedy trial."
> Syllabus Point 2, *State v. Foddrell,* 171 W.Va. 54, 297 S.E.2d 829 (1982).

*See also State v. Bennett,* 172 W.Va. 123, 304 S.E.2d 28 (1983); *State ex rel. Leonard v. Hey,* W.Va., 269 S.E.2d 394 (1980).

In the present case, a reason for the delay was the complexity of the investigation involved and the fact that the defendant sought dismissal of his first indictment, which was, in fact, dismissed. The defendant also sought and received a number of continuances. For instance, on Oc-

tober 6, 1988, two months before trial, the defendant requested a continuance on the ground that he was not adequately prepared to go to trial.

After considering the factors set forth in syllabus point 4 of *State v. Drachman, supra,* this Court believes that there were valid reasons for the delay and that the defendant has failed to show adequate prejudice to support reversal of his conviction on this ground.

For the reasons stated, the judgment of the Circuit Court of Cabell County is affirmed.

Affirmed.