445 S.E.2d 759

STATE of West Virginia, Plaintiff Below, Appellee,

v.

Paul FARMER, Defendant Below, Appellant.

No. 22022.

Supreme Court of Appeals of West Virginia.

Submitted May 11, 1994.

Decided June 16, 1994.

Kristen L. Keller, Chief Deputy Pros. Atty. for Raleigh County, Beckley, for appellee.

John D. Wooton, Wooton, Wooton & Fragile, Beckley, for appellant.

## PER CURIAM:

The appellant and defendant below, Paul Farmer, appeals his convictions for first-degree murder with a recommendation of mercy, kidnapping, and conspiracy. The sentences for the murder and kidnapping convictions were ordered to be served consecutively, and the sentence for the conspiracy conviction was ordered to be served concurrently with the previous sentences.

The defendant asserts the following trial errors: (1) that the trial court should not have admitted evidence of the collateral crimes of his codefendant Harry "Butch" Reynolds III; (2) that the trial court erred in allowing the jury to hear evidence that the codefendant, Mr. Reynolds, was convicted and received two life sentences; (3) that the trial court erred in not granting the defendant's request for discovery; (4) that the trial court should not have permitted the jury to find the defendant guilty of both murder and kidnapping; (5) that the trial court erred in allowing the State to introduce evidence of the defendant's bad character when the defendant had not put his character at issue; and (6) that the combination of the cumulative errors deprived the defendant of his right to a fair trial.

## I.

We initially recognize that when we review the evidence at trial in an appeal from a criminal conviction, we apply the standard set out in Syllabus Point 1 of *State v. Starkey,* 161 W.Va. 517, 244 S.E.2d 219 (1978):

"In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done."

*See also* Syllabus Point 7, *State v. Knotts,* 187 W.Va. 795, 421 S.E.2d 917 (1992); Syllabus Point 10, *State v. Gill,* 187 W.Va. 136, 416 S.E.2d 253 (1992); Syllabus Point 5, *State v. Farmer,* 185 W.Va. 232, 406 S.E.2d 458 (1991).

According to the State's evidence, on July 30, 1990, Mr. Reynolds asked the defendant for a ride. The defendant lived with his girlfriend, Yurfredia Evans, who owned a car. Mr. Reynolds and the defendant wanted to go to a spot in the Beckley area known as Piney Oaks. Before they reached Piney Oaks, Mr. Reynolds and the defendant asked Ms. Evans, who was driving the car, to stop at a liquor store. Ms. Evans stopped, and the defendant purchased a pint of liquor. Ms. Evans then drove the rest of the way to Piney Oaks.

In a parking lot adjacent to the Piney Oaks apartment complex, they encountered the victim, John Maxwell, along with Walter Leach and a few other people. When Mr. Maxwell left with Mr. Leach, both the defendant and Mr. Reynolds directed Ms. Evans to follow them. Ms. Evans found the car driven by Mr. Leach at a different apartment complex.

The defendant got out of the car carrying an iron bar in a suede holster. He met Mr. Maxwell and Mr. Leach as they walked out of one of the apartments. He then proceeded to accost Mr. Maxwell and forced him to get into the back seat of Ms. Evans' car with Mr. Reynolds. Ms. Evans was ordered to drive out of town.

At some point during the drive out of town, Mr. Maxwell was shot. Ms. Evans was directed to a wooded area where Mr. Maxwell, who was still alive, was taken out of the car and into the woods. He was shot again and

stabbed several times. According to Ms. Evans, both the defendant and Mr. Reynolds were talking to Mr. Maxwell over money that he owed them.

When the defendant and Mr. Reynolds came back to the car, the defendant took the keys. Ms. Evans was driven home where the defendant obtained a blanket and shovels. When Mr. Maxwell's body eventually was discovered, it had been burned and buried.

The defendant's chief defense at trial was that he committed the crimes under duress out of fear of Mr. Reynolds. His claim of duress was refuted at trial by Ms. Evans who testified in the State's case-in-chief. Eyewitnesses at the point where the kidnapping took place saw the defendant, who was carrying a length of pipe, get out of the car, accost Mr. Maxwell, and force him into the back seat of Ms. Evans' car. The defendant makes no claim that there was insufficient evidence to support his conviction.

## II.

■ The defendant's contention of error involving collateral crimes of his codefendant arose from the admission of evidence that the codefendant two years earlier stabbed the victim. There also was testimony that there were several outstanding warrants for Mr. Reynolds, and the police had information that Mr. Reynolds was the last person with Mr. Maxwell. Based on this evidence, the police decided to arrest Mr. Reynolds. Testimony also was elicited that the police considered Mr. Reynolds to be dangerous, and a number of officers were involved in his arrest at an apartment.

There was evidence from Ms. Evans that the defendant was aware of Mr. Reynolds' earlier incident with Mr. Maxwell. The defendant acknowledged that fact on cross-examination. The circumstances surrounding Mr. Reynolds' arrest and the view of the police that he was a dangerous person were again brought out by defense counsel on cross-examination. In light of the defendant's theory that he was coerced into going along with the crime out of fear of Mr. Reynolds, it is doubtful that this evidence could constitute error.

The State argues that independent of the coercion defense, it had a right to show knowledge of Mr. Reynolds' violent propensities and, in particular, violence against Mr. Maxwell, as it would impart motive and intent to the defendant to participate in the crime. The State cites *State v. Bonham*, 184 W.Va. 555, 401 S.E.2d 901 (1990), where the defendant was convicted of conspiracy to commit malicious wounding and voluntary manslaughter. Mr. Bonham hired an individual by the name of Rush Smith to assault the victim. In the course of this endeavor, the victim was killed. At trial, Mr. Smith testified as to earlier incidents of violence that he committed in carrying out the defendant's requests. We held that this evidence was admissible:

> "The fact that the defendant had knowledge that Rush Smith was a violent person, as well as the fact that he had previously associated with Rush Smith to commit violent acts, tended to show that he intended Rush Smith to act in a similar manner toward the victim in the present crime. This Court believes that the evidence did tend to establish intent, preparation, knowledge, and identity, and, ... was properly admissible under Rule 404(b) of the West Virginia Rules of Evidence." 184 W.Va. at 559, 401 S.E.2d at 905.

In this case, the trial court gave a cautionary instruction advising the jury that the prior crimes and violence of Mr. Reynolds only could be used to show knowledge, purpose, motive, and the lack of mistake or accident on the part of the defendant. Under these facts, we find no error.

The same is true of the defendant's claim that a police officer associated the defendant with Mr. Reynolds in drug dealing. This association occurred when the officer testified about information received from Mr. Leach concerning Mr. Reynolds' drug dealing. This testimony was part of the State's theory as to why Mr. Maxwell was killed. The prosecutor corrected this statement after the defendant's objection by having the officer testify that Mr. Leach only implicated Mr. Reynolds in drug activities. The officer then specifically was asked if Mr. Leach pro-

vided any information as to the defendant, and he responded no. The trial court also instructed the jury at the close of the case that there was no evidence to suggest that the defendant dealt in drugs. We find no error as to this testimony.

## III.

■ The defendant also alleges the trial court erred in making certain comments to Mr. Reynolds, who was called as a witness by the State. After being sworn in and asked a few preliminary questions, Mr. Reynolds announced he refused to answer any more questions under the Fifth Amendment. The trial court in advising Mr. Reynolds that he had no right to claim the Fifth Amendment disclosed that he had been convicted and sentenced to two life terms and his appeal had not been accepted. When Mr. Reynolds persisted in his Fifth Amendment claim, he was excused as a witness. The trial court then instructed the jury that they should disregard the fact that Mr. Reynolds was present.

Defense counsel objected to the trial court's statement as to Mr. Reynolds' criminal convictions. An *in camera* hearing was held with the trial court stating that it would make a preliminary determination as to whether the prosecutor had a reasonable basis for believing that Mr. Reynolds would testify. The prosecutor recounted various contacts made by a named State police officer with Mr. Reynolds at the Moundsville Penitentiary where he was confined. They believed he was sufficiently cooperative and provided them with enough information to justify transporting him to the Raleigh County jail so he could testify at the defendant's trial. Mr. Reynolds again spoke to a State police officer at the jail, and he did not state that he would take the Fifth Amendment. Defense counsel admitted he had been contacted by Mr. Reynolds and visited him after he arrived at the jail. He was accompanied by his investigator and Mr. Reynolds' attorney. At that time, he was informed by Mr. Reynolds that he would not testify.

The trial judge after hearing these representations requested further research and held a second *in camera* hearing. He stated that he may have been precipitous in speaking to Mr. Reynolds about his criminal convictions in front of the jury as precluding his right to invoke the Fifth Amendment. The trial judge determined that he would not grant a mistrial, but would instruct the jury to disregard his remarks about Mr. Reynolds' criminal convictions as having any bearing on Mr. Farmer. The jury was so instructed.

■ In *State v. Caudill*, 170 W.Va. 74, 289 S.E.2d 748 (1982), we discussed at some length the parameters of an accomplice's testimony against a defendant and came to this conclusion in Syllabus Point 3:

"In a criminal trial an accomplice may testify as a witness on behalf of the State to having entered a plea of guilty to the crime charged against a defendant where such testimony is not for the purpose of proving the guilt of the defendant and is relevant to the issue of the witness-accomplice's credibility. The failure by a trial judge to give a jury instruction so limiting such testimony is, however, reversible error."

*See also* Syllabus Point 5, *Acord v. Hedrick*, 176 W.Va. 154, 342 S.E.2d 120 (1986).

This case differs from both *Caudill* and *Acord* in that the accomplices in those cases did testify at some length about the criminal episodes which were the same as those charged against the defendants. In each case, the prosecutor elicited on direct examination the fact that the accomplices pleaded guilty to those offenses. Here, with the witness taking the Fifth Amendment, the defendant benefitted from the standpoint of not having him give any adverse testimony. The trial court's remarks about Mr. Reynolds' having received two life sentences could be deemed to have harmed the defendant. However, this situation was ameliorated by the trial court's later cautionary instruction to the jury to disregard its statements as to Mr. Reynolds' sentences. It would seem that overall the defendant gained a distinct advantage over what we allow under *Caudill* since, there, an accomplice's sentence can be disclosed to the jury, as well as his adverse testimony. Consequently, we decline to find

any reversible error.[1] We do suggest that in the future it would be well to have an *in camera* hearing in advance of an accomplice's testimony in order to determine whether he will invoke his Fifth Amendment right. *See State v. Reedy,* 177 W.Va. 406, 413–14, 352 S.E.2d 158, 165–66 (1986); *State v. Cook,* 175 W.Va. 185, 196, 332 S.E.2d 147, 158–59 (1985).

## IV.

The defendant contends that the trial court erred in allowing the jury to consider both a kidnapping and a murder offense, citing Syllabus Point 2 of *State v. Miller,* 175 W.Va. 616, 336 S.E.2d 910 (1985):

"In interpreting and applying a generally worded kidnapping statute, such as W.Va.Code, 61–2–14a, in a situation where another offense was committed, some reasonable limitations on the broad scope of kidnapping must be developed. The general rule is that a kidnapping has not been committed when it is incidental to another crime. In deciding whether the acts that technically constitute kidnapping were incidental to another crime, courts examine the length of time the victim was held or moved, the distance the victim was forced to move, the location and environment of the place the victim was detained, and the exposure of the victim to an increased risk of harm."

In *Miller,* we affirmed the kidnapping conviction after concluding that it was not incidental to the companion crime of sexual assault. The victim and her cousin were induced to get into the defendant's car on the

pretext of helping him find his dog. After driving around, the cousin left the vehicle and the defendant pulled a knife on the victim. He then drove to a secluded area where he sexually assaulted the victim. We found that the length of time the victim was held and the distance she was moved were not inconsequential. Moreover, the isolated area of the place she was taken to presented an increased risk of harm. Much the same pattern was found in *State v. Fortner,* 182 W.Va. 345, 387 S.E.2d 812 (1989), where we upheld kidnapping and sexual assault convictions. *See also State v. Weaver,* 181 W.Va. 274, 382 S.E.2d 327 (1989) (abduction and attempt to kill with a poison or other destructive thing).

Here, the kidnapping was for the purpose of murdering the victim. The State's evidence was that the victim was forcibly removed from a safe area. He was transported to a remote area and shot while riding in the car. He was not dead when the car reached the remote area, but was killed at the scene. Under these facts, we do not believe the kidnapping was merely incidental to the murder. It was the essential means of committing the murder so that the perpetrators could not be identified. We find no error in this assignment.[2]

For the foregoing reasons, we affirm the judgment of the Circuit Court of Raleigh County.

Affirmed.

1. We emphasize that this holding should not be interpreted to mean that an accomplice can be placed on the witness stand solely to inform the jury of his conviction of the same crime charged to the defendant. We made this plain in *Caudill* where we said: "A guilty plea made by an accomplice cannot be used as an attempt to show guilt by association. Testimony having that intent and so limited as to achieve that intent is error." 170 W.Va. at 81, 289 S.E.2d at 755. (Citation omitted).

2. The defendant asserts two other assignments of error which we find to be without merit. The first is that he was not provided with discovery. The defendant's initial attorney agreed to waive discovery if the State would furnish a complete

transcript of the trial of the codefendant, Mr. Reynolds. Thereafter, present counsel was appointed. The State furnished him with copies of statements intended to be used at trial, as well as the criminal records of the State's witnesses. The defendant makes no assertion that he was surprised by any matters the State presented which could have been obtained through discovery.

The second assignment of error is that the State introduced evidence of the defendant's character when he did not put his character at issue. We find this assignment to be without merit because the defendant testified that he was a good American citizen and had done nothing wrong.